UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
NICHOLAS FANELLI,

                Plaintiff,

  -against-

ELLENVILLE CENTRAL SCHOOL
DISTRICT,

                Defendant.
---------------------------------------------------------X

Index No.  1:24-cv-00826 (MAD/ML)

**COMPLAINT
AND JURY DEMAND**

## PRELIMINARY STATEMENT

1. This action seeks damages, injunctive relief, attorneys' fees, and other appropriate equitable and legal relief on behalf of Plaintiff as a result of Defendants' violation of his civil rights.

2. This action is brought to remedy discrimination and retaliation on the basis of Disability pursuant to the ADA (42 U.S.C. § 12111(8)) and Section 504 of the Rehabilitation Act of 1973.

3. Plaintiff Nicholas Fanelli (hereinafter "Plaintiff") seeks compensatory and other appropriate relief pursuant to the ADA 42 U.S.C. 12117 and Section 504 of the Rehabilitation Act of 1973.

4. Defendant is under a duty not to engage in disability discrimination nor retaliate for complaining about discrimination.

5. As hereinafter shown, Plaintiff, who suffered from Hashimoto's Thyroiditis, chronic inflammation, chronic fatigue, and chronic pain and was also diagnosed with work-related PTSD, is a member of a protected class and beneficiary of this non-discrimination mandate. As further shown herein, Defendants have breached their duty of non-discrimination.

1

**JURISDICTION, VENUE, AND CONDITIONS PRECEDENT TO THIS SUIT**

6. The Court has subject-matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1343(a)(4), 28 U.S.C. § 1331, Section 504 of the Rehabilitation Act of 1973, and the Americans with Disabilities Act, as amended. Plaintiff duly filed charges with the EEOC, and this action was commenced within ninety days of receipt of the notice of right to sue letter.

7. Venue lies in the Northern District of New York under 28 U.S.C.§ 1391(b)(1) because this is where in which all or part of the cause of action accrued and the District where Defendants maintain a residence, an agency or representative and where Defendant is physically headquartered.

**THE PARTIES**

8. Plaintiff Nicholas Fanelli is a citizen of the United States and the State of New York and has a disability and a perceived disability that impacts major life activities as set forth below. More specifically, Plaintiff suffers from an autoimmune disease of the thyroid requiring lifelong medication, chronic fatigue, chronic inflammation, and chronic pain. Plaintiff had a record of such impairments and was regarded as having such impairments. Plaintiff was an employee (teacher) as defined by the ADA and Section 504 of the Rehabilitation Act.

9. Defendant Ellenville Central School District employs more than fifty employees and is an employer within the meaning under the ADA and Section 504 of the Rehabilitation Act.

**FACTUAL STATEMENT**

10. Plaintiff is a permanently certified K-6 teacher assigned to the Elementary school. He has taught in the Middle School for twenty-two years and Elementary School for three years.

11. Plaintiff has a disability under the ADA to wit, an autoimmune disease of the thyroid requiring lifelong medication, including medical marijuana used for chronic pain, chronic fatigue,

chronic inflammation, and chronic pain.

12. Plaintiff has a record of impairment in that documentation and requests for accommodations have been made by Plaintiff.

13. The District has HIPAA releases allowing them to speak with his doctors despite the fact that he documented illnesses. They have participated in the interactive process and have provided the Defendant with documentation concerning appropriate accommodations.

14. However, Defendant has a history of denying Plaintiff all recommended reasonable accommodations but has recently increased its efforts to deny him reasonable accommodations.

15. Plaintiff duly filed charges of discrimination based on his disability.

16. More specifically, Plaintiff first appealed to Superintendent Wiles on January 26, 2023.

17. Plaintiff then appealed to the BOE on December 11, 2023, and gave additional information on December 12, 2023.

18. On March 28, 2023, Plaintiff also filed a complaint with the New York State Division of Human Rights.

19. On April 11, 2023, Plaintiff sent an email titled "harassment" to Lisa Wiles complaining about the treatment from Mrs. Dwyer. Mrs. Wiles did not acknowledge receipt of my complaint, nor did she conduct an investigation in accordance with BOE policy. When reviewing the complaint, it is clear that Plaintiff is complaining about disability discrimination.

20. The District continues to discriminate against the Plaintiff based on his disability, perceived disability, and retaliation.

21. Specifically, the District Administration and Lisa Dwyer have worked to remove his flexible scheduling for the 2023-2024 school year.

22. The flexible scheduling that was in place for the 2022-2023 school year was made during the interactive process between Mrs. Ey, Plaintiff, and his union representative.

23. The flexible scheduling from the 22-23 school year partially accommodated Plaintiff's need to have the majority of his work in the morning hours, a late lunch, and less demanding classes in the afternoon. Plaintiff was also to have his prep period put at the very end of the day to allow him to leave at 3:00 when fatigued, in need of medication, or both. The District allowed Plaintiff to leave at 3:00 for a period of time but then withdrew the accommodation.

24. Moreover, Ms. Dwyer sent an email over the summer letting Plaintiff know that if he still needed accommodations, he should contact her before the end of the summer. If he no longer needed accommodations, he should "do nothing," and she would assume that he no longer needed accommodations.

25. Plaintiff is a ten-month employee who does not regularly check school email over the summer. The District regularly mails updates and letters from administration to ten-month employees over the summer but failed to do so for Plaintiff.

26. Mrs. Dwyer once again changed the process for 504 accommodations just for Plaintiff by trying to remove his accommodations in their entirety by relying on the probability that he would not be checking his school email in July or August.

27. Ms. Dwyer's attempt to deny Plaintiff accommodations was discriminatory and retaliatory.

28. Lisa Dwyer unilaterally changed Plaintiff's 504 accommodations by adding an accommodation on September 6, 2023, despite the fact they never met, never engaged in the interactive process, and did not accommodate Plaintiff's disabilities.

29. Plaintiff appealed to Lisa Wiles and The Board of Education last school year about the accommodation being inappropriate because the accommodation was to allow Plaintiff to leave

District property for 15-20 minutes during his prep period to medicate with medical marijuana, return to work, dismiss the students, and then drive home medicated and fatigued.

30. Plaintiff pointed out, on numerous occasions, to Lisa Wiles and Lisa Dwyer why this accommodation was not reasonable.

31. By the time Plaintiff brings students to their special, punches out in the lobby, retrieves his medication from his vehicle, goes 500 feet from school property, uses his medication, returns it to his locked glove compartment in his vehicle, goes back and punches in, picks up students from special, and dismisses students, he will have spent his entire prep time using his medical marijuana, thereby creating more work to take home.

32. Moreover, using marijuana at the end of the day when he is fatigued can make him more fatigued.

33. The Defendant is expecting a person with documented afternoon fatigue and chronic fatigue to use medical marijuana and then drive home a short time thereafter. This is unsafe for Plaintiff and others on the road.

34. Although Plaintiff can effectively perform his teaching duties, and the District's doctor, Dr. Craft, confirmed it was safe for him to work while using his medication, the timing of using medical marijuana and driving within a half hour is not reasonable or safe.

35. Any reasonable person observing the totality of the situation can plainly conclude that it is not reasonable to have someone use marijuana and then drive, especially when that person has documented fatigue in the afternoons.

36. It would be reasonable for the Defendant to grant his accommodation of leaving at 3:00.

37. This would allow Plaintiff to drive home safely, have a period of rest, and then complete his prep work. This is accommodation given to coaches.

38. Coaches leave early (during the contractual day) to coach. Usually, they have their prep scheduled at the end of the day, and they are allowed to forgo their contractual prep period to go coach.

39. In addition to eliminating the accommodation Plaintiff was given, the District created a new ISS position to be staffed by a full-time counselor in order to block his lateral transfer as recommended by Plaintiff's doctors. This was done not only to block his doctor's recommendation that he be laterally transferred to that position but also to negate the NYSDHR from granting his request to be transferred in his original complaint.

40. Lisa Dwyer stated in an email dated June 16, 2022, "I inquired again today about the two positions you are interested in, though I was told again that there is no intention to add an AIS math or full-time ISS teacher." Plaintiff started the complaint process with NYSDHR on March 28, 2023.

41. On April 24, 2023, Plaintiff emailed his supervisor, Mrs. Ey, reminding her of his doctors' recommendations to be transferred to an AIS or ISS position. Only after receiving the written complaint from NYSDHR did the District decide to make the Elementary School ISS position full-time. The District appointed a full-time counselor on June 13, 2023. This was two months after Plaintiff reminded Mrs. Ey of the doctors' recommendations. The timeline and change in a decades-long practice, without negotiating or notice to the union, was done to confound the Plaintiff's requests for a lateral transfer as recommended by multiple medical professionals.

42. The District staffed ISS in the elementary school for over 20 years as a duty. Only after Plaintiff made a request for a lateral transfer did the District (Lisa Wiles) decide to restructure the ISS position. Only the elementary ISS position was restructured to include a full-time ISS Counselor position.

43. The Plaintiff contacted his union president, who stated that he never negotiated the position with the District and was considering filing a grievance because other unit members complained that the counselor had less workload than the rest of the teachers and counselors.

44. The Defendant also added tutoring services (an additional expense on top of the additional ISS position) for students who receive ISS because, by state law, students in ISS are supposed to receive continued instruction from a certified teacher. The counselor is not qualified to provide continued instruction. Prior to the counselor position being created, the ISS room was staffed by qualified teachers on a rotating duty basis. There was no full-time teacher in the ISS position.

45. The Defendant twisted itself into a constructive denial knot to create a counselor position and block the Plaintiff from the transfer recommended by his doctor. Here, the creation of a new, full-time counselor position was done to deny the Plaintiff a transfer.

46. The additional accommodation added by Ms. Dwyer was discovered in a meeting with the new 504 Chair, Jessica Mataraza. Upon discovering the new accommodation, Mrs. Mataraza did not remove it. Plaintiff informed her that he never agreed to the accommodation and that he did not want it. To date, the "accommodation" is still part of Plaintiff's plan.

47. Plaintiff flexible scheduling accommodation was unilaterally removed by the District.

48. Plaintiff's building principal, Mrs. Ey, could have just left his schedule in place the way it was for the 22-23 school year. She purposely changed it to remove flexible scheduling. When Plaintiff emailed Mrs. Ey to remind her that we met to create a schedule for the 22-23 school year, which included flexible scheduling, she claimed that flexible scheduling no longer included the parameters we followed the previous school year.

49. The flexible scheduling was to include the bulk of Plaintiff's classes in the morning when he is most alert, a late lunch, one or two less demanding classes in the afternoon, and a last-period

7

prep. Mrs. Ey, without discussion or his input, actually inverted his schedule from the 22-23 school year to put the bulk of his work at the end of the day. This is the exact opposite of what Plaintiff needed and what he at least partially received for the 22-23 school year.

50. In her September 29th Determination, Mrs. Mataraza denied Plaintiff a reasonable accommodation and, once again, changed the definition of "flexible scheduling" to "flexible scheduling for non-instructional duties" to deny Plaintiff a reasonable accommodation.

51. Mrs. Mataraza ignored the past practice of allowing Plaintiff to choose a later lunch, have the majority of his classes in the morning, and less rigorous classes in the afternoon.

52. Mrs. Ey, after Plaintiff told her that he was filing a retaliation complaint, which would include her, called him in for a meeting with his union representatives to discuss problems with his reading folders. This was 10/03/23. She also stated at the beginning of the meeting that it was "just a discussion" and "not counseling." After the meeting, she emailed Plaintiff a counseling memo, which cc'd his personnel file and the superintendent. None of the reading folders was complete, yet none of the teachers from the prior years were called in for a "discussion" followed up with a written memo.

53. Plaintiff continues to be retaliated against by Mrs. Ey during the 23-24 school year, including multiple counseling memos and emails intended to increase the intensity of the hostile working environment. The number of counseling memos and email reminders about policies (which can also be considered a form of counseling) is disproportionately high compared to any other year in the Plaintiff's 25 years employed with the District.

**FIRST CLAIM FOR RELIEF**
**DISCRIMINATION UNDER THE ADA**

54. Plaintiff realleges the preceding paragraphs as if set forth here.

55. Plaintiff is a qualified individual within the meaning of the ADA (42 U.S.C. § 12111(8). Plaintiff reported his disability and requested medical accommodations regarding his disability.

56. Defendants discriminated against Plaintiff on the basis of his disability and perceived disability and by failing to reasonably accommodate Plaintiff as set forth above.

57. As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff suffered and will continue to suffer harm, including but not limited to a loss of employment opportunities, humiliation, embarrassment, reputational harm, emotional, physical, and psychological distress, and other damages.

## SECOND CLAIM FOR RELIEF
## RETALIATION UNDER THE ADA

58. Plaintiff realleges the preceding paragraphs as if set forth here.

59. Plaintiff is a qualified individual within the meaning of the ADA (42 U.S.C. § 12111(8)). Plaintiff reported his disability and requested medical accommodations regarding his disability.

60. Defendants retaliated against Plaintiff on the basis of his disability and perceived disability by failing to reasonably accommodate Plaintiff as set forth above.

61. As a direct and proximate result of Defendants' unlawful retaliation, Plaintiff suffered and will continue to suffer harm, including but not limited to a loss of employment opportunities, humiliation, embarrassment, reputational harm, emotional, physical, and psychological distress, and other damages.

## THIRD CLAIM FOR RELIEF
## 504 OF THE REHABILITATION ACT

62. Plaintiffs repeat and realleges each and every preceding paragraph as if fully set forth at length herein.

63. The Defendants violated the Rehabilitation Act, 29 U.S.C. Section 504, et seq. by

discriminating against Plaintiff because of his disability and perceived disability and by failing to reasonably accommodate Plaintiff.

64. As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff suffered and will continue to suffer harm, including but not limited to a loss of employment opportunities, humiliation, embarrassment, reputational harm, emotional, physical, and psychological distress, and other damages.

## FOURTH CLAIM FOR RELIEF
## RETALIATION UNDER SECTION 504

65. Plaintiff realleges the preceding paragraphs as if set forth here

66. Defendant intentionally retaliated against Plaintiff after making an EEO complaint in violation of Section 504 of the Rehabilitation Act.

67. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered and will continue to suffer harm, including but not limited to loss of employment opportunities, humiliation, embarrassment, reputational harm, emotional, physical, and psychological distress, and other damages.

## PLAINTIFF HEREIN DEMANDS A TRIAL BY JURY

WHEREFORE, the Plaintiff herein demands judgment as follows:

    A.    Judgment for economic losses and compensatory damages in an amount not yet determined by a jury.

    B.    Reasonable attorney's fees

    C.    Pain and Suffering and emotional damages stemming from this acting

    D.    Any other relief this Court deems appropriate

Dated: New York, New York
      June 27, 2024                                             Respectfully submitted,

                                                               STEWART LEE KARLIN
                                                               LAW GROUP, P.C.

                                                               _____
                                                               Stewart Lee Karlin, Esq.
                                                               *Attorneys for Plaintiff*
                                                               111 John St., 22nd Floor
                                                               New York, NY 10038
                                                               (212) 792-9670
                                                               slk@stewartkarlin.com